IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| ELIZABETH A. DOMINGO, | ) | |
| | ) | Case No. 6:23-cv-143 |
| Plaintiff, | ) | |
| | ) | DEMAND FOR JURY TRIAL |
| v. | ) | |
| | ) | |
| HILTON RESORTS CORPORATION, | ) | |
| doing business as HILTON GRAND | ) | |
| VACATIONS, | ) | |
| AMERICAN EXPRESS COMPANY, and | ) | |
| FIRST AMERICAN TITLE INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**COMPLAINT**

Plaintiff Elizabeth Domingo ("Ms. Domingo"), for her complaint against Defendants

Hilton Resorts Corporation, doing business as Hilton Grand Vacations ("Defendant HGV"),

American Express Company ("Defendant AMEX"), and First American Title Insurance

Company ("Defendant First American") (collectively, "Defendants") alleges the following:

1.      Ms. Domingo brings this action to seek redress for, among other things, the unfair

and deceptive trade practices committed by Defendant HGV in the course of the sale of a

timeshare located at Defendant HGV's Tuscany Village Vacation Suites, and the efforts taken by

Defendants to collect, or assist with the collection of, Ms. Domingo's non-existent debt.

Defendants' actions have substantially harmed Ms. Domingo, for which she seeks compensatory

and punitive damages, as well as injunctive and declaratory relief.

2.      Ms. Domingo's claims arise under the Fair Debt Collection Procedures Act, 15

U.S.C. § 1692 *et seq.* ("FDCPA"), and the laws of the State of Florida, including the Florida

Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* ("FDUTPA"), the Florida

Vacation Plan and Timesharing Act, Fla. Stat. § 721.02 *et seq.* ("Timeshare Act"), and common

law claims of fraud, breach of contract, and negligent misrepresentation under Florida law.

## JURISDICTION AND VENUE

3.     The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1332

because this case involves questions of federal law, and because the amount in controversy

exceeds $75,000 and the parties are citizens of different states.

4.     The Court has supplemental jurisdiction over the state law claims under 28 U.S.C.

§ 1367 because the claims form part of the same case or controversy under Article III of the

United States Constitution. The state law claims share all common operative facts with Ms.

Domingo's federal law claim, and the parties are identical. Resolving Domingo's federal and

state claims in a single action serves the interests of judicial economy, convenience, consistency,

and fairness to the parties.

5.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because the property that

is the subject of this action is situated within this judicial district.

## THE PARTIES

6.     Plaintiff Elizabeth Domingo purchased the timeshare that is the subject of this

action. Ms. Domingo resides in Prince George's County, Maryland.

7.     Defendant Hilton Resorts Corporation, doing business as Hilton Grand Vacations,

is a timeshare company that, among other things, markets and sells vacation ownership intervals

(commonly known as "timeshares"). Defendant HGV is named as a party to all Counts of the

Complaint. Defendant HGV has a principal office located at 6355 Metrowest Blvd., Orlando,

Florida 32835.

8.      Defendant American Express Company is a multinational financial services corporation specialized in payment cards. Defendant AMEX is named as a party to Counts I and II of the Complaint. Defendant AMEX regularly engages in business in Florida.

9.      Defendant First American Title Insurance Company provides title insurance protection and professional services for homebuyers and sellers. Defendant First American is named as a party to Count III of the Complaint. Defendant First American regularly engages in business in Florida.

## BACKGROUND

10.     On January 5, 2022, Domingo entered into an agreement with Defendant HGV for the purchase of a "vacation ownership interest" at Tuscany Village Vacation Suites in Orlando, Florida. Attached hereto as Exhibit 1 is a true and correct copy of the timeshare purchase agreement (hereinafter referred to as "the Timeshare Agreement").

11.     Under the Timeshare Agreement, Ms. Domingo agreed to pay Defendant HGV $30,990.00 in exchange for an undivided ownership interest in the timeshare. Ms. Domingo used her credit account with Defendant AMEX to pay the $4,015.68 down payment required under the Timeshare Agreement.

12.     Ms. Domingo executed a promissory note wherein she promised to pay the remaining balance of $27,891.00 to Defendant HGV, at a rate of $484.56 per month, over the course of 120 consecutive months, subject to an annual interest rate of 16.99%. Attached hereto as Exhibit 2 is a true and correct copy of the promissory note (hereinafter referred to as "the Promissory Note").

13.     On January 6, 2022, Defendant HGV sent Ms. Domingo copies of the disclosure documents for the Agreement. Attached hereto as Exhibit 3 is a true and correct copy of the

email correspondence from Defendant HGV to Ms. Domingo that contained multiple disclosure packets.

14.    One of the disclosure packets that Defendant HGV provided to Ms. Domingo on January 6, 2022 contained a Notice of Mutual Right of Cancellation of Timeshare Purchase form (hereinafter referred to as "the Cancellation Notice"). Attached hereto as Exhibit 4 is a true and correct copy of the Cancellation Notice.

15.    The Notice informed Ms. Domingo that either her or the developer could cancel the transaction within *ten calendar days after executing the contract or after receipt of the timeshare disclosure statement, whichever occurred later*. The Notice expressly contained the following statement:

> YOU OR THE DEVELOPER MAY CANCEL THIS TRANSACTION WITHIN TEN (10) CALENDAR DAYS AFTER EXECUTION OF THE CONTRACT OR AFTER YOUR RECEIPT OF THE TIMESHARE DISCLOSURE STATEMENT, WHICHEVER OCCURS LATER, AND YOU SHALL BE ENTITLED TO A REFUND WITHIN FIFTEEN (15) BUSINESS DAYS AFTER THE DATE THE NOTICE OF CANCELLATION IS RECEIVED. YOU ARE REQUIRED WITHIN FIFTEEN (15) BUSINESS DAYS AFTER YOU SEND THIS CANCELLATION NOTICE TO THE DEVELOPER, TO RETURN TO THE DEVELOPER ALL SALES MATERIALS (SUCH AS YOUR SALES CONTRACT, DISCLOSURE STATEMENT, ETC.), IN GOOD CONDITION, REASONABLE WEAR AND TEAR EXCEPTED.

16.    Under Florida law, a purchaser of a timeshare has 10 days to rescind the purchase agreement.

17.    On January 13, 2022, Ms. Domingo invoked her right to cancel the transaction by sending Defendant HGV an executed copy of the Cancellation Notice, wherein she requested that the entire transaction be canceled. As instructed by Defendant HGV, Ms. Domingo faxed the Cancellation Notice to the fax number listed on the form (i.e., 1-808-846-6843). Attached hereto as Exhibit 5 is a true and correct copy of the Cancellation Notice that Ms. Domingo sent to Defendant HGV on January 13, 2022.

18.     Ms. Domingo sent the executed copy of the Cancellation Notice to Defendant HGVC within 7 calendar days from the date she received the disclosure documents on January 6, 2022.

19.     Ms. Domingo also telegraphed a copy of the Cancellation Notice to Defendant HGV on January 15, 2022.

20.     Ms. Domingo telegraphed the copy of the Cancellation Notice to Defendant HGVC within 10 calendar days from the date she executed the Timeshare Agreement on January 5, 2022 and received the disclosure statements on January 6, 2022.

21.     Despite following Defendant HGV's instructions, the company refused to honor Ms. Domingo's requests to cancel the transaction. Defendant HGV claimed that Hawaii law governed the contract and that, under Hawaii law, Ms. Domingo did not submit the Cancellation Notice within 7 calendar days from the date she executed the Timeshare Agreement.

22.     Section 15 of the Timeshare Agreement expressly states, in relevant part, that:

**For All Purchasers**. The law of the state where the Project is located will govern this Agreement, Deed and the Note and Mortgage, if any, and all other aspects of the Project. ***This Agreement shall be governed under and interpreted and enforced in accordance with the laws of the State of Florida***.

(emphasis added).

23.     Exhibit A to the Timeshare Agreement makes clear that the Project (i.e., the timeshare) is located in Orlando, Florida.

24.     On January 24, 2022, Ms. Domingo's prior counsel sent Defendant HGV an initial demand letter requesting that the company immediately honor Ms. Domingo's request to terminate the entire transaction. Defendant HGV continued to refuse to honor Ms. Domingo's demand.

25.    On or about January 28, 2022, Hilton recorded a Combination Special Warranty Deed and Mortgage (Document No. 20220065610) in the land records of Orange County, Florida.

26.    On or about March 1, 2022, Ms. Domingo contacted Defendant AMEX to dispute the $4,015.68 charge that was remitted to Defendant HGV as the down payment for the purchase of the timeshare. Ms. Domingo explained to Defendant AMEX that she had timely submitted a cancellation notice to Defendant HGV but that Defendant HGV refused to honor the request. Ms. Domingo provided Defendant AMEX with copies of the cancellation requests she sent to Defendant HGV.

27.    On March 3, 2022, Defendant HGV sent Ms. Domingo a collection notice seeking to collect a "significantly past due [balance] in the amount of $454.39." In the collection notice, Defendant HGV warned Ms. Domingo that "[it] may report information about your account to credit bureaus[, and] [l]ate payments, missed payments or other defaults may be reflected in your credit report." The notice further informed Ms. Domingo that, if she did not make a payment or enter into a loan repayment program, all amounts due under the Promissory Note may be accelerated without further notice.

28.    At some point thereafter, and despite having knowledge of the ongoing dispute, Defendant HGV informed Defendant AMEX that Ms. Domingo had not timely rescinded the Timeshare Agreement. Attached hereto as Exhibit 6 is a true and correct copy of the representations made by Defendant HGV to Defendant AMEX regarding the matter.

29.    Defendant HGV knew or should have known that the statements it made to Defendant AMEX concerning the matter were false or misleading. Defendant HGV failed to inform Defendant AMEX that Ms. Domingo had received copies of the disclosure documents on

January 6, 2022, which rendered the cancellation notice she sent to Defendant HGV as timely regardless of whether Hawaii law or Florida law applied.

30.    Defendant HGV had a business relationship with American Express in that the latter provided financing to facilitate the purchase of timeshares by Defendant HGV's customers.

31.    On or about April 20, 2022, American Express sent Ms. Domingo a letter to acknowledge that it had received a copy of the cancellation request she had previously provided to Defendant HGV. The acknowledgment further confirmed that Defendant HGV had advised the company that Ms. Domingo had not submitted the cancellation notice within "the timeframe of seven days." Defendant AMEX informed Ms. Domingo that the company would rebill the $4,015.68 charge on her account, despite the fact that she had disputed the charge.

32.    Defendant AMEX failed to perform a reasonable investigation into Ms. Domingo's dispute.

33.    On or about May 5, 2022, Defendant HGV sent Ms. Domingo a collection notice seeking to collect a "significantly past due [balance] in the amount of $1,363.17." The notice also informed Ms. Domingo that, if she did not make a payment or enter into a loan repayment program, all amounts due under the Promissory Note may be accelerated without further notice.

34.    Defendant HGV continued to send Ms. Domingo similar collection notices periodically.

35.    On May 20, 2022, the undersigned sent Defendant HGV a second demand letter requesting that it immediately: (a) honor Ms. Domingo's request to cancel the Timeshare Agreement; (b) terminate the Promissory Note executed by the parties; (c) refund Ms. Domingo the charge of $4,015.68 that was rebilled to her American Express credit card; (d) remove all negative and/or derogatory information about Ms. Domingo that Defendant HGV provided to

any credit reporting agencies; and (e) compensate Ms. Domingo for the costs and fees incurred in connection with this matter, including reasonable attorneys' fees.

36.    On or about June 30, 2022, Defendant HGV responded to the demand letter, refusing to honor Ms. Domingo's requests and claiming that it had "reviewed all the documents and disclosures provided to [Ms. Domingo] at the time of sale and are confident that [it has] complied fully with applicable laws of Hawaii [(]where the sale occurred) and Nevada (where the project is located)."

37.    In its response to Ms. Domingo's demand letter, Defendant HGV represented that the location of the timeshare was in Nevada. Defendant HGV's representation was false. Ms. Domingo's timeshare was located in Orlando, Florida.

38.    On August 1, 2022, Defendant AMEX sent Ms. Domingo a notice that it had cancelled her credit account because she was past due on the account. Ms. Dominguez was past due on the account because Defendant HGV refused to honor her contractual right to rescind the Timeshare Agreement. The account closure negatively impacted Ms. Domingo's credit score and creditworthiness.

39.    On or about January 16, 2023, Defendant Frist American sent Ms. Domingo a Notice of Default and Intent to Foreclose. Attached hereto as Exhibit 7 is a true and correct copy of the notice. Defendant First American was hired by Defendant HGV to initiate trustee foreclosure proceedings against the timeshare.

40.    On January 23, 2023, Ms. Domingo sent Defendant First American an executed copy of the Objection to Trustee Foreclosure Procedure. Attached hereto as Exhibit 8 is a true and correct copy of the notice.

## HARM CAUSED BY DEFENDANTS' ACTIONS

41.    Defendants' conduct has inflicted significant harm upon Ms. Domingo, including but not limited to pecuniary losses and emotional distress.

42.    Defendant HGV submitted negative information about Ms. Domingo's creditworthiness to one or more of the credit reporting agencies. Defendant HGV's actions have caused Ms. Domingo's creditors to submit negative information about Ms. Domingo's creditworthiness to one or more of the credit reporting agencies. The negative information submitted by Defendant HGV, or that which Defendant HGV caused to be submitted, has significantly impacted Ms. Domingo's credit score.

43.    Defendant AMEX submitted negative information about Ms. Domingo's creditworthiness to one or more of the credit reporting agencies. The negative information submitted by Defendant AMEX has negatively impacted Ms. Domingo's credit score.

44.    The actions taken by Defendant HGV and AMEX have caused Ms. Domingo's credit score to decrease by more than 200 points in the last 6 months.

45.    Prior to Defendants' actions, Ms. Domingo had an exceptional credit score that exceeded 830.

46.    Defendant HGV knew or should have known that the negative information it submitted to the credit reporting agencies was false or otherwise inaccurate.

47.    Defendant AMEX knew or should have known that the negative information it submitted to the credit reporting agencies was false or otherwise inaccurate.

48.     Ms. Domingo has had multiple credit accounts involuntarily closed due to the negative credit information submitted by Defendant HGV to one or more of the credit reporting agencies.

49.    Defendant HGV has sent collection notices to Ms. Domingo regarding the purported outstanding balance owed on her account, which is in excess of $26,000. Defendant HGV's collection notices have caused Ms. Domingo to suffer significant levels of emotional distress.

50.    Defendant AMEX has sent collection notices to Ms. Domingo regarding the purported outstanding balance owed on her account, which is in excess of $4,000. Defendant AMEX's collection notices have caused Ms. Domingo to suffer significant levels of anxiety and stress.

51.    Ms. Domingo has incurred significant legal fees and expended a copious amount of time and resources trying to rectify this matter.

<u>**COUNT I**</u>
**Fair Debt Collection Practices Act Violations by**
**Defendants HGV and AMEX**

52.    Plaintiff incorporates herein the allegations set forth in paragraphs 6 through 51, above.

53.    The Fair Debt Collection Practices Act ("FDCPA") prohibits debt collectors from engaging in abusive practices in the collection of consumer debts.

54.    Defendant HGV is a debt collector under the FDCPA. Defendant HGV has repeatedly attempted and continues to attempt to collect the purported balance owed by Ms. Domingo under the Timeshare Agreement.

55.    Defendant AMEX is a debt collector under the FDCPA. Defendant AMEX has repeatedly attempted and continues to attempt to collect the purported balance owed by Ms. Domingo in connection with the down payment she made to Defendant HGV under the Timeshare Agreement.

56.     Defendant HGV has made and continues to make false, deceptive, and misleading representations to Ms. Domingo concerning the character, amount, or legal status of the purported debt it claims Ms. Domingo owes under the Timeshare Agreement. Defendant HGV continues to attempt to collect a debt based on an agreement that Ms. Domingo timely rescinded and does not owe. Defendant HGV's actions violate 15 U.S.C. § 1692e(2)(A).

57.     Defendant AMEX has made and continues to make false, deceptive, and misleading representations to Ms. Domingo concerning the character, amount, or legal status of the purported debt Ms. Domingo owes on her American Express credit account ending in 51006. Defendant AMEX continues to attempt to collect a debt that Ms. Domingo properly disputed and does not owe. Defendant AMEX's actions violate 15 U.S.C. § 1692e(2)(A).

58.     Defendant HGV has made and continues to make false representations to collect or during its attempts to collect the purported debt it claims Ms. Domingo owes under the Timeshare Agreement. Defendant HGV's actions violate 15 U.S.C. § 1692e(10).

59.     Defendant AMEX has made and continues to make false representations to collect or during its attempts to collect the purported debt Ms. Domingo owes on her American Express credit account ending in 51006. Defendant AMEX's actions violate 15 U.S.C. § 1692e(10).

60.     Defendant HGV communicated information about Ms. Domingo's creditworthiness to one or more of the credit reporting agencies that it knew or should have known was false. Defendant HGV's actions violated 15 U.S.C. § 1692e(8).

61.     Defendant AMEX communicated information about Ms. Domingo's creditworthiness to one or more of the credit reporting agencies that it knew or should have known was false. Defendant AMEX's actions violated 15 U.S.C. § 1692e(8).

62.     Defendant HGV's abusive debt collection practices against Ms. Domingo were intentional. Defendant HGV's abusive debt collection practices against Ms. Domingo were not the result of a bona fide error.

63.     Defendant AMEX's abusive debt collection practices against Ms. Domingo were intentional. Defendant AMEX's abusive debt collection practices against Ms. Domingo were not the result of a bona fide error.

64.     Defendant HGV's abusive debt collection practices have caused and continue to cause substantial harm to Ms. Domingo.

65.     Defendant AMEX's abusive debt collection practices have caused and continue to cause substantial harm to Ms. Domingo.

<u>COUNT II</u>
**Florida Deceptive and Unfair Trade Practices Act Violations by
Defendants HGV and AMEX**

66.     Plaintiff incorporates herein the allegations set forth in paragraphs 6 through 65, above.

67.     The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

68.     Defendant HGV engages in trade practices under the FDUTPA by selling timeshares to customers and providing financial services to facilitate the purchase of timeshares.

69.     Defendant AMEX engages in trade or commerce practices under the FDUTPA through the financial services it provides to customers.

70.     Defendant HGV engaged in unfair and deceptive acts or practices in the course of selling the timeshare to Ms. Domingo by: (a) providing her with materially different notices of

cancellation forms in the same disclosure packet; (b) providing conflicting instructions regarding her rescission rights and the process for invoking those rights; (c) including conflicting choice of law and forum selection provisions in the Timeshare Agreement; and (d) refusing to honor her timely request to rescind the Timeshare Agreement.

71.    The acts or practices referenced in paragraph 68 caused and continue to cause injury to Ms. Domingo and are likely to cause substantial injury to future timeshare purchasers.

72.    Ms. Domingo was not reasonably able to avoid the harm caused by Defendant HGV's act or practice because, among other things: (a) Defendant HGV provided the disclosure packet after—not during or before—Ms. Domingo executed the Timeshare Agreement and associated closing documents; and (b) Defendant HGV refused to honor the notice of cancellation submitted by Ms. Domingo.

73.    The harm imposed on Ms. Domingo—and the public—by Defendant HGV's acts or practices are not outweighed by countervailing benefits to customers like Ms. Domingo or to competition.

74.    The representations made by Defendant HGV to its customers about their contractual rescission rights mislead or are likely to mislead the customers. The timeshare purchase agreements and associated disclosure documents contain conflicting rescission deadlines and instructions.

75.    Ms. Domingo was misled by the representations made by Defendant HGV regarding her rights to rescind the Timeshare Agreement.

76.    The representations made by Defendant HGV to Ms. Domingo regarding her rights to rescind the Timeshare Agreement were material.

77.    Defendant HGV's unfair and deceptive conduct has occurred, is now occurring, or is likely to occur in the future.

78.    Ms. Domingo has suffered actual damages as a result of Defendant HGV's unfair and deceptive conduct. For example, Ms. Domingo owes Defendant HGV more than $26,000 and owes Defendant AMEX more than $4,000 as a result of Defendant HGV's actions.

**COUNT III**
**Florida Vacation Plan and Timesharing Act Violations by**
**Defendants HGV and First American**

79.    Plaintiff incorporates herein the allegations set forth in paragraphs 6 through 51, above.

80.    The Florida Vacation Plan and Timesharing Act (the "Timeshare Act") was enacted to recognize that "a uniform and consistent method of regulation is necessary in order to safeguard Florida's tourism industry and the state's economic well-being," and to "[e]stablish procedures for the creation, sale, exchange, promotion, and operation of timeshare plans." Fla. Stat. § 721.02(2) and (5).

81.    Under Florida law, a purchaser of a timeshare has "the right to cancel the contract until midnight of the 10th calendar day" following the later of the execution date or the day on which the purchaser received the last of all documents required to be provided to her. Fla. Stat. § 721.02(1).

82.    Defendant HGV made conflicting representations to Ms. Domingo regarding her right to cancel the Timeshare Agreement and associated agreements.

83.    In one document, for example, Defendant HGV stated that Ms. Domingo had 10 calendar days to rescind the Timeshare Agreement and cancel the entire transaction. In another document, Defendant HGV stated that Ms. Domingo had 7 calendar days to do so.

84.     The conflicting contract rescission deadlines created a false or misleading impression regarding the timeshare promotion, the timeshare plan, and the rights Ms. Domingo had in connection with the purchase of the timeshare.

85.     Defendant HGV intentionally misrepresented the contract rescission dates in an effort to confuse Ms. Domingo, induce her into purchasing the timeshare, and deter her from invoking her right to rescind the Timeshare Agreement.

86.     Defendant HGV performed the closing before the expiration of Ms. Domingo's 10-day cancellation period, in violation of Fla. Stat. §§ 721.06(g)(3) and 721.10(1)(b).

87.     Defendant First American, at the request of Defendant HGV, is attempting to foreclose on the timeshare through the trustee foreclosure process. Defendant First American does not have any legal right to pursue foreclose proceedings against the timeshare because Ms. Domingo properly cancelled the transaction.

88.     Defendant HGV's actions have caused and continue to cause substantial harm to Ms. Domingo.

### COUNT IV
### Breach of Contract by Defendant HGV

89.     Plaintiff incorporates herein the allegations set forth in paragraphs 1 through 51, above.

90.     Under Florida law, every contract contains an implied covenant of good faith and fair dealing, requiring that the parties follow standards of good faith and fair dealing designed to protect the parties' reasonable contractual expectations.

91.     A contract existed between Ms. Domingo and Defendant HGV by virtue of the Timeshare Agreement.

92.    Section 10 of the Timeshare Agreement expressly states that it "shall be construed in accordance with the laws of the State of Florida." Section 15(a) further provides that "[t]he law of the state where the Project is located will govern this Agreement, Deed and the Note and Mortgage, if any, and all other aspects of the Project."

93.    Notwithstanding the choice of law provision set forth in Section 10 of the Timeshare Agreement, the Rescission Rights set forth on the last page of the Agreement state: "Purchaser and Seller have a mutual right to cancel this Agreement within seven (7) calendar days after execution or within seven (7) calendar days after Purchaser's receipt of a Disclosure Statement, whichever is later...."

94.    As referenced in paragraph 13, above, Defendant HGV sent Ms. Domingo the disclosure documents on January 6, 2022, the day after she executed the Timeshare Agreement. Ms. Domingo elected to rescind the contract on January 13, 2022 (i.e., within the 7 calendar days called for under the Timeshare Agreement) by faxing a copy of her notice of cancellation to the fax number set forth in the Timeshare Agreement. The same fax number is also contained in the instructions on the notice of cancellation form.

95.    Defendant HGV failed to perform its contractual obligation in good faith by refusing to accept Ms. Domingo's rescission request and by refusing to cancel the Timeshare Agreement.

96.    Ms. Domingo has suffered damages as a result of Defendant HGV's breach of implied covenant of good faith and fair dealing under the Timeshare Agreement.

## COUNT V
### Negligent Misrepresentation by Defendant HGV

97.    Plaintiff incorporates herein the allegations set forth in paragraphs 1 through 51, above.

98.     Defendant HGV represented to Ms. Domingo that she had 7 days from the date she executed the Timeshare Agreement to rescind or cancel the agreement. Defendant HGV's representation was false.

99.     Ms. Domingo had 10 days from the date she executed the Timeshare Agreement to rescind or cancel the agreement.

100.    Defendant HGV's representation about Ms. Domingo's right of rescission was a material fact.

101.    Defendant HGV should have known that its representation about the rescission deadline was false.

102.    Defendant represented to Ms. Domingo that she had not timely submitted the notice of cancellation within the timeframe called for under the Timeshare Agreement. Defendant HGV may have believed that its representation to Ms. Domingo was true, but it was in fact false. Ms. Domingo timely submitted her notice of cancellation request to Defendant HGV. Defendant HGV provided Ms. Domingo with its disclosure statements on January 6, 2022, and Ms. Domingo sent her notice of cancellation on January 13, 2022—seven calendar days from the date she received the disclosure statements.

103.    Defendant HGV should have known that its representation about the untimeliness of Ms. Domingo's rescission request was false.

104.    Defendant HGV intended to induce Ms. Domingo to rely on the representations referenced in paragraphs 96 and 100 because it provided the representations during the course of the sale of the timeshare to Ms. Domingo.

105.    Ms. Domingo acted in justifiable reliance upon the misrepresentations and was injured as a result.

## COUNT VI
## Fraud by Defendant HGV

106.    Plaintiff incorporates herein the allegations set forth in paragraphs 1 through 51, and 98 though 105, above.

107.    Defendant HGV knew that its representation regarding the 7-day right of rescission was false.

108.    By making the representation in its timeshare disclosure documents and purchase agreement, Defendant HGV intended to induce Ms. Domingo into purchasing the timeshare.

109.    Ms. Domingo purchased the timeshare in reliance on Defendant HGV's representation that she had 10 calendar days to cancel the transaction.

110.    Ms. Domingo was harmed by acting in reliance on Defendant HGV's representation.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Domingo respectfully requests that the Court enter judgment on the Complaint in her favor and against Defendants Hilton Resorts Corporation, American Express Corporation, and First American Title Insurance Company, as follows:

A.    Declare that Florida law governs the terms and conditions of the Timeshare Agreement, and that Ms. Domingo timely submitted her notice of cancellation to Defendant HGV under Florida law;

B.    Permanently enjoin Defendants from taking any further collection actions against Ms. Domingo for any portion of the debt connected with the purchase of the timeshare;

C.    Award Ms. Domingo compensatory damages for the harm she suffered as a result of Defendant HGV's egregious conduct, in fair and reasonable amount to be determined at trial;

D.    Award Ms. Domingo compensatory damages for the harm she suffered as a result of Defendant AMEX's conduct, in fair and reasonable amount to be determined at trial;

E.    Award Ms. Domingo additional damages of $1,000 against Defendants HGV and AMEX, as allowed under 15 U.S.C. § 192k(a)(2)(A),

F.    Declare that Defendant HGV is the responsible party for paying Defendant AMEX the outstanding balance due on Ms. Domingo's credit account ending in 51006;

G.    Award Ms. Domingo punitive damages against Defendant HGV, in an amount that sufficiently punishes, penalizes, and/or deters Defendant HGV's unlawful conduct;

H.    Award Ms. Domingo the costs and fees she incurred in connection with this action, including her reasonable attorneys' fees;

I.    Permanently enjoin Defendant HGV from continuing to engage in the unfair and deceptive business practice of providing timeshare purchasers with: (a) conflicting contract rescission rights and instructions in its disclosure documents; or (b) with conflicting contract rescission rights and instructions in its timeshare purchase agreements; and

J.    Grant Ms. Domingo such other relief as the Court deems just and proper, including additional injunctive and declaratory relief as may be required in the interest of justice.

\\

\\

\\

\\

\\

\\

\\

Dated: January 26, 2023

*Jordan Howlette*

JORDAN D. HOWLETTE
FL Bar No.: 125031
Managing Attorney
JD Howlette Law
1140 3rd St. NE
Washington, DC 20002
Tel: (202) 921-6005
Fax: (202) 921-7102
jordan@jdhowlettelaw.com

*Counsel for the Plaintiff*